# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| STATE OF OKLAHOMA, et al., | |
| *Petitioners*, | |
| v. | No. 23-9514 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| *Respondents*. | |
| | |
| OKLAHOMA GAS AND ELECTRIC COMPANY, | |
| *Petitioner*, | |
| v. | No. 23-9521 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| *Respondents*. | |

## OKLAHOMA PETITIONERS' JOINT RESPONSE OPPOSING RESPONDENTS' MOTION TO TRANSFER THE PETITION FOR REVIEW TO THE D.C. CIRCUIT OR DISMISS BASED ON IMPROPER VENUE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

GLOSSARY OF ABBREVIATIONS ................................................................ v

INTRODUCTION ................................................................................ 1

BACKGROUND ................................................................................. 3

I.    The Clean Air Act established a regulatory regime grounded in cooperative federalism. ................................................................ 3

II.   Oklahoma developed its state implementation plan based on local and regional considerations. ............................................................ 4

III.  EPA disapproved Oklahoma's State Plan in a state-specific analysis. .......... 6

STANDARD OF REVIEW ....................................................................... 7

ARGUMENT .................................................................................. 8

I.    EPA's disapproval of Oklahoma's state implementation plan is a locally or regionally applicable action. ................................................ 8

II.   EPA's disapproval of other state implementation plans in a single notice, applying the same standard, does not transform EPA's disapproval of Oklahoma's plan into an action of nationwide applicability. ............................................................... 14

III.  EPA cannot make its disapproval of Oklahoma's State Plan "national" through its incorrect "determination" of national scope. ..................... 19

PRAYER .................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Rd. & Transp. Builders Ass'n v. EPA*,
    705 F.3d 453 (D.C. Cir. 2013)...............................................................1, 8, 16, 21

*ATK Launch Sys., Inc. v. EPA*,
    651 F.3d 1194 (10th Cir. 2011) .............. 1, 3, 8, 9, 10, 11, 14, 15, 17, 18, 21, 22

*Chevron U.S.A. Inc. v. EPA*,
    45 F.4th 380 (D.C. Cir. 2022).................................................................8, 15

*Comm. for a Better Arvin v. EPA*,
    786 F.3d 1169 (9th Cir. 2015) ................................................................9

*Dalton Trucking, Inc. v. EPA*,
    808 F.3d 875 (D.C. Cir. 2015).................................................................19

*Encino Motorcars, LLC v. Navarro*,
    579 U.S. 211 (2016)................................................................15

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014)................................................................3, 10

*Harrison v. PPG Indus., Inc.*,
    446 U.S. 578 (1980)................................................................8

*Lindstrom v. United States*,
    510 F.3d 1191 (10th Cir. 2007) ................................................................7

*Mountain States Legal Found. v. Costle*,
    630 F.2d 754 (10th Cir. 1980) ................................................................9

*Nat'l Ass'n of Mfrs. v. EPA*,
    750 F.3d 921 (D.C. Cir. 2014)................................................................4

*Nat'l Parks Conservation Ass'n v. McCarthy*,
    816 F.3d 989 (8th Cir. 2016) ................................................................8

*Natural Res. Def. Council, Inc. v. Thomas*,
    838 F.2d 1224 (D.C. Cir. 1988)................................................................18

ii

*North Dakota v. EPA*,
   730 F.3d 750 (8th Cir. 2013) ...................................................................9

*Oklahoma v. EPA*,
   723 F.3d 1201 (10th Cir. 2013) .............................................................9

*S. Ill. Power Coop. v. EPA*,
   863 F.3d 666 (7th Cir. 2017) ........................................................10, 19

*Sierra Club v. EPA*,
   47 F.4th 738 (D.C. Cir. 2022).................................................................9

*State of New York v. EPA*,
   133 F.3d 987 (7th Cir. 1998) ...............................................................18

*Texas Mun. Power Agency v. EPA*,
   89 F.3d 858 (D.C. Cir. 1996)..........................................................19, 20

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ... 2, 3, 4, 7, 8, 10, 11, 12, 15, 16, 18, 19, 20, 21, 22

*Texas v. EPA*,
   983 F.3d 826 (5th Cir. 2020) ...............................................................20

*Texas v. EPA*,
   No. 10-60961, 2011 WL 710598 (5th Cir. Feb. 24, 2011)..........................11, 18

*Train v. Nat. Res. Def. Council, Inc.*,
   421 U.S. 60 (1975).....................................................................2, 6, 12

*W. Va. Chamber of Com. v. Browner*,
   No. 98-1013, 1998 WL 827315 (4th Cir. 1998).................................................11

**Statutes**

42 U.S.C. § 7409 ...........................................................................................4

42 U.S.C. § 7410.....................................................................................4, 6, 12

42 U.S.C. § 7607........................................ 1, 2, 3, 7, 8, 9, 14, 15, 16, 17, 18, 19, 20

**Regulations and Regulatory Action**

1998 "NOx SIP Call," 63 Fed. Reg. 57,356 (Oct. 27, 1998)....................................11

Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48,208 (Aug. 8, 2011) ............................................................................6

National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,291 (Oct. 26, 2015) ......................................................................4

Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) ...............................................................................2, 13, 18

Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (Feb. 13, 2023) ...................................................6, 7, 12, 13, 17

Oklahoma 2015 Ozone Infrastructure and Transport SIP, EPA-R06-OAR-2021-0801-0005 ................................... 5, 6, 7, 9, 12, 13, 14, 15, 18, 19, 21

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| APA | Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* |
| EPA | U.S. Environmental Protection Agency |
| Final Rule | Air Plan Disapprovals; Interstate Transport of Air Pollution for the 2015 8-hour Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 9,336 (February 13, 2023) |
| Good Neighbor Provision | Clean Air Act § 110(a)(2)(D)(i)(I), 42 U.S.C. § 7410(a)(2)(D)(i)(I), addressing a state's interstate transport obligations |
| NAAQS | National Ambient Air Quality Standards |
| NOx | Nitrogen oxides |
| OG&E | Oklahoma Gas and Electric Company |
| Oklahoma State Plan | Oklahoma's State Implementation Plan submitted on Oct. 25, 2018, to address requirements under 42 U.S.C. § 7410(a)(2)(D)(i)(I) for the 2015 Ozone NAAQS |
| Petitioners | State of Oklahoma, Oklahoma Department of Environmental Quality, and Oklahoma Gas and Electric Company |
| Proposed Disapproval | Air Plan Disapproval; Arkansas, Louisiana, Oklahoma, and Texas; Interstate Transport of Air Pollution for the 2015 8-Hour Ozone National Ambient Air Quality Standards, 87 Fed. Reg. 9,798 (Feb. 22, 2022) |
| SIP Call | National rule promulgated by EPA directing states to correct specific provisions in their state implementation plans |

## INTRODUCTION

These petitions for review belong in this Court.[1] They challenge EPA's decision whether to approve Oklahoma's state implementation plan—an action courts agree is the "prototypical 'locally or regionally applicable' action." *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 455 (D.C. Cir. 2013) (Kavanaugh, J.) (quoting 42 U.S.C. § 7607(b)(1)); *accord ATK Launch Sys., Inc. v. EPA*, 651 F.3d 1194, 1199 (10th Cir. 2011) (characterizing a state implementation plan as a "purely local action" and "an undisputably regional action"). As such, the Clean Air Act mandates that the venue for these petitions is not the D.C. Circuit, but the "Court of Appeals for the appropriate circuit," which is this Court. 42 U.S.C. § 7607(b)(1). That is why every prior challenge to the approval or disapproval of a state's implementation plan has occurred in the appropriate regional circuit.

This unbroken history—which EPA now seeks to break—is in accord with the text of the Clean Air Act. It lists any "action in approving or promulgating any [state] implementation plan" as one that is *per se* "locally or regionally applicable." *Id.* For good reason. The Clean Air Act creates a regime of cooperative federalism, where some nationwide decisions are delegated to EPA while others—

---

[1] Consistent with this Court's March 16, 2023, order, Dkt. No. 10984095, discouraging Petitioners from duplicating arguments, Petitioners Oklahoma and Oklahoma Gas & Electric have coordinated on a joint opposition to Respondents' Motion. Petitioners also have endeavored to avoid duplication of arguments raised in Case Nos. 23-9509, 23-9512, and 23-9520, to the extent practical.

including state implementation plans—are the "primary responsibility" of states, which exercise "wide discretion in formulating [their] plan[s]," with the EPA playing only a "ministerial function" of ensuring compliance with the Act. *Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016); *see also Train v. Nat. Res. Def. Council, Inc.*, 421 U.S. 60, 79 (1975).

This case exemplifies the general rule that state plans are "locally or regionally applicable" actions. Oklahoma's plan concerned Oklahoma-only emissions sources and focused on Oklahoma-specific considerations, such as the State's unique meteorological features and the special characteristics of its electricity generation market. EPA's disapproval of that plan rejected Oklahoma's state-specific judgments.

To the extent that EPA attempts to characterize its Final Rule as national because Oklahoma's plan addresses an "interdependent" pollution issue crossing state borders, *see* Mot. 11, 16, its argument only highlights why this case belongs in a regional circuit. As EPA concedes, "interstate ozone transport" is a "*regional-scale* pollution problem.*" 87 Fed. Reg. 9,801 (emphasis added). And in the Final Rule EPA asserts that Oklahoma's plan fails to address the State's alleged significant contribution to ozone pollution in one other state—Texas. Such "regionally applicable" actions belong in this Court, not the D.C. Circuit. 42 U.S.C. § 7607(b)(1). Moreover, since a rule's "practical effect[s]" have no bearing on the

2

action's applicability under § 7607(b)(1), the Court must focus on the fact that EPA's rejection of Oklahoma's plan is "applicable" only to pollution sources in Oklahoma. *ATK*, 651 F.3d at 1197.

Nothing marks this case as an extraordinary exception to the normal course that approval decisions of state plans are reviewed in the regional circuit. EPA's application of a consistent standard to all state plans is required by the APA, but it is not a mechanism to transform local actions into national ones. EPA's decision to publish its final disapprovals of many proposed state plans in a single *Federal Register* notice does not change the analysis, lest the Court's authority turn on the form of the publication rather than the substance of EPA's action. And EPA's post hoc conclusion that its determinations have a nationwide scope and effect based on these same flawed rationales is owed no deference. *Texas*, 829 F.3d at 417-18 & n.13. Accordingly, this Court should deny EPA's motion.

## BACKGROUND

## I.    The Clean Air Act established a regulatory regime grounded in cooperative federalism.

The Clean Air Act centers around the "'core principle' of cooperative federalism," delegating some regulatory responsibilities to EPA and others to states. *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 511 n.14 (2014). It delegated EPA authority to establish National Ambient Air Quality Standards ("NAAQS") that are "requisite to protect the public health" and "the public welfare"

nationwide. 42 U.S.C. § 7409(a)-(b). But it gave individual states responsibility to "implement[], main[tain], and enforce[]" these standards through state implementation plans based on state-specific considerations. *Id.* § 7410(a). States assume "primary responsibility for implementing and enforcing the standards" through these state plans. *Nat'l Ass'n of Mfrs. v. EPA*, 750 F.3d 921, 923 (D.C. Cir. 2014); *see also Texas*, 829 F.3d at 411.

One of the requirements for a state implementation plan is set forth in the Act's "Good Neighbor" provision. 42 U.S.C. § 7410(a)(2)(D)(i)(I). That provision requires state implementation plans to prevent "any source or other type of emissions activity within the State from emitting any air pollutant in amounts which will … contribute significantly to nonattainment in, or interfere with maintenance by, any other State with respect to" the NAAQS. *Id.* Unless a state's implementation plan violates this or other statutory requirements, EPA must approve the plan. *Id.* § 7410(k)(3).

## II. Oklahoma developed its state implementation plan based on local and regional considerations.

In 2015, EPA updated the ozone NAAQS. National Ambient Air Quality Standards for Ozone, 80 Fed. Reg. 65,291 (Oct. 26, 2015). Oklahoma developed and submitted a state implementation plan to meet that new standard, addressing, among other requirements, the Act's Good Neighbor Provision. *See* Oklahoma 2015 Ozone

4

Infrastructure and Transport SIP, EPA-R06-OAR-2021-0801-0005 ("Oklahoma's State Plan").

In developing its plan, Oklahoma emphasized the need for a "more granular" and "more focused" approach to addressing interstate transport issues due to myriad local and regional considerations. *See id.* at 8. Oklahoma highlighted the various meteorological conditions that affect ozone formation in Oklahoma and thereby influence the selection of appropriate modeling assumptions that help regulators understand future regional air quality issues and the State's contributions to these issues. *Id.* at 6-7. Similarly, because "the electric market is regional," Oklahoma accounted for the transmission limitations and highly renewable generating base of the Southwest Power Pool, the regional electricity transmission organization in which Oklahoma participates. *See id.* at 8, 14. Finally, Oklahoma analyzed regional ozone season emissions trends, both in-state and in the Southwest Power Pool, as well as emissions reductions associated with various existing programs covering sources of pollution in Oklahoma. *Id.* at 14-15. Based on the weight of the evidence, Oklahoma determined that it was not significantly contributing to downwind air quality issues and that no additional controls were required to comply with the Act's Good Neighbor Provision. *Id.* at 15-16.

### III.    EPA disapproved Oklahoma's State Plan in a state-specific analysis.

EPA then reviewed Oklahoma's State Plan. The Act strictly cabins EPA's role in reviewing state implementation plans: EPA "shall" approve a state plan "if it meets all of the applicable requirements" under the statute. 42 U.S.C. § 7410(k)(3); *Train*, 421 U.S. at 79 ("The Act gives [EPA] no authority to question the wisdom of a State's choices of emission limitations if they are part of a plan which satisfies the standards of § [7410(a)(2)]."). Only if EPA determines that a state implementation plan fails to meet those statutory requirements can EPA promulgate a federal implementation plan based on its own—rather than the state's—analysis and judgments. 42 U.S.C. § 7410(c)(1).

EPA generally reviews state plans addressing the Good Neighbor provision using a 4-step framework. Federal Implementation Plans: Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals, 76 Fed. Reg. 48,208 (Aug. 8, 2011); *see also* Mot. 5-6. Under this framework, EPA identifies (1) sites that are likely to have problems attaining or maintaining the air quality standard, (2) which upwind states are "linked" to those air quality problems, (3) the emissions reductions necessary to eliminate the upwind states' "significant contributions" to nonattainment of the air quality standard, and (4) the permanent and enforceable measures needed to achieve those emissions reductions. *See* 88 Fed. Reg. 9,336,

9,338 (Feb. 13, 2023); Mot. 6. This framework is not required by any statutory provision, but rather provides an analytical structure for EPA's convenience.

EPA applied this framework to its review of Oklahoma's State Plan. 88 Fed. Reg. at 9,338; Mot. 5. EPA disapproved Oklahoma's State Plan based on its determinations that (1) Oklahoma was linked to downwind air quality issues in modeled future years and (2) Oklahoma failed to analyze additional emissions control opportunities in Oklahoma to prevent the State from significantly contributing to those modeled future air quality issues. 88 Fed. Reg. at 9,359. EPA found that Oklahoma's regional modeling was "legally and technically flawed" and that Oklahoma's assessment of existing in-state controls was insufficient. *Id.*

## STANDARD OF REVIEW

Courts decide jurisdiction and venue under § 7607(b)(1) *de novo*, with no deference to EPA's view of the issues. *Texas v. EPA*, 829 F.3d 405, 417-18 & n.13 (5th Cir. 2016) ("Nor do we defer to the agency's interpretation when determining venue."); *see also Lindstrom v. United States*, 510 F.3d 1191, 1195 n.3 (10th Cir. 2007) ("Determining federal court jurisdiction is exclusively the province of the courts regardless of what an agency may say." (quotation omitted)). Thus, in evaluating whether a challenged EPA action is truly nationwide in applicability, scope, or effect for purposes of venue under § 7607(b)(1), the Court conducts an "independent assessment" of both "the applicability of the action" and "the scope of

[its] determinations." *Texas*, 829 F.3d at 421; *see also ATK*, 651 F.3d at 1197 (noting that "this court must analyze" the § 7607(b)(1) issues).

ARGUMENT

## I.    EPA's disapproval of Oklahoma's state implementation plan is a locally or regionally applicable action.

The Clean Air Act's judicial review provision directs that "nationally applicable regulations" shall be reviewed "in the United States Court of Appeals for the District of Columbia," but "locally or regionally applicable" agency actions "may be filed only in the United States Court of Appeals for the appropriate circuit." 42 U.S.C. § 7607(b)(1). The provision "specifically enumerate[s]" a list of EPA actions that are *per se* "locally or regionally applicable." *Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 584 (1980). That list includes challenges to EPA "action in approving or promulgating any implementation plan under" the Good Neighbor Provision of the Clean Air Act. 42 U.S.C. § 7607(b)(1).

In other words, "the statutory text places review of [state implementation plan] approvals or disapprovals in the regional circuits." *Texas*, 829 F.3d at 419 n.16. Indeed, courts have repeatedly described action on whether to approve a state implementation plan as the "prototypical 'locally or regionally applicable' action that may be challenged only in the appropriate regional court of appeals." *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 455; *Nat'l Parks Conservation Ass'n v. McCarthy*, 816 F.3d 989, 993 (8th Cir. 2016) (same); *see also Chevron U.S.A. Inc.*

8

*v. EPA*, 45 F.4th 380, 386 (D.C. Cir. 2022) (describing state implementation plan rulemaking as at the far "end of the spectrum" of locally or regionally applicable actions).

This Court, too, has expressed the same conclusion, *ATK*, 651 F.3d at 1199, and repeatedly exercised jurisdiction over state implementation plan-related challenges, *see Oklahoma v. EPA*, 723 F.3d 1201, 1204 (10th Cir. 2013) (reviewing EPA's disapproval and replacement of Oklahoma's implementation plan under § 7607(b)(1)); *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 757 (10th Cir. 1980) (reviewing petition challenging the approval of Colorado's implementation plan). Other regional circuits also hear these challenges as a matter of course. *See, e.g.*, *North Dakota v. EPA*, 730 F.3d 750, 755 (8th Cir. 2013) (reviewing rule disapproving two North Dakota implementation plans); *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1173 (9th Cir. 2015) (reviewing challenge to approval of California's implementation plan). Accordingly, under the plain text of the statute and unanimous precedent among the circuits, review of this action challenging the disapproval of Oklahoma's State Plan is appropriate in this Court.

EPA's disapproval of Oklahoma's plan differs markedly from the kinds of regulatory action that are nationally applicable. Setting NAAQS is a "textbook example" of a nationally applicable action. *Sierra Club v. EPA*, 47 F.4th 738, 743 (D.C. Cir. 2022). Similarly, "[o]nce EPA settles on a [new] NAAQS, the Act

9

requires the Agency to designate 'nonattainment' areas" through a nationwide rulemaking. *EME Homer City*, 572 U.S. at 498. So, unlike a state implementation plan—where EPA reviews a plan that is specific to and prepared by a state—"EPA's [nonattainment area designations] create[] a standard that applies to the entire country" and "[a]ny area falling below the standard receives the nonattainment designation and attendant consequences." *ATK*, 651 F.3d at 1200; *see also S. Ill. Power Coop. v. EPA*, 863 F.3d 666, 671 (7th Cir. 2017). This Court recognized those key distinctions in *ATK*, where it directed a challenge to nonattainment designations to the D.C. Circuit while at the same time making clear that a state implementation plan is "an undisputably regional action." *ATK*, 651 F.3d at 1199. In sum, the nonattainment designations process is a national EPA-driven rulemaking where states make only "recommendations," *S. Ill. Power Coop.*, 863 F.3d at 668, whereas in creating state implementation plans, "states, not EPA, drive the regulatory process," and EPA plays only a "ministerial function of reviewing [state plans] for consistency with the Act's requirements." *Texas*, 829 F.3d at 411 (quotation omitted).

So called "SIP Calls" operate in much the same way as nonattainment designations. "A SIP Call is an EPA rule calling for revision to *any* [state implementation plan] not meeting a newly-established standard." *ATK*, 651 F.3d at 1199 (emphasis added). "In issuing a SIP Call, EPA determines which states' [state

implementation plans] are non-compliant and in need of revision" based on EPA's review and revision of the NAAQS. *Id.*; *see, e.g.*, 1998 "NOx SIP Call," 63 Fed. Reg. 57,356 (Oct. 27, 1998) (requiring states to submit updated plans addressing EPA's revised secondary 8-hour ozone NAAQS). Affected states submit an updated analysis addressing EPA's newly-established standard, which EPA then reviews in a separate action. *See* 63 Fed. Reg. at 57,358 (explaining that states "determine what measures to adopt" in response to the SIP Call). SIP Calls thus involve EPA mandating "the same standard [apply] to every state" and calling for states to propose revisions to "non-conforming [state implementation plans] in multiple regions of the country." *ATK*, 651 F.3d at 1199-1200 (citing *Texas v. EPA*, No. 10-60961, 2011 WL 710598, at *3 (5th Cir. Feb. 24, 2011); *W. Va. Chamber of Com. v. Browner*, No. 98-1013, 1998 WL 827315, at *5-7 (4th Cir. 1998)). Courts have thus held SIP Calls are nationwide in applicability, even while holding that approval decisions of state implementation plans themselves are locally or regionally applicable.

Treating these regulatory actions differently from state plan approvals and disapprovals makes sense. Nonattainment designations and SIP Calls are both national regulatory actions initiated by EPA and applied to every state to require conformance with the same standard. A state implementation plan, by contrast, is developed by a state, which has "wide discretion in formulating its plan." *Texas*, 829 F.3d at 411 (quotation omitted). EPA's role is "confine[d] … to the ministerial

function of reviewing [state implementation plans] for consistency with the Act's requirements." *Id.*; *accord Train*, 421 U.S. at 79. The process of developing and reviewing these plans is necessarily "contextual and variable" based on state-specific considerations. *Texas*, 829 F.3d at 424. States must make "intensely factual determinations" about local conditions and standards, considering the "particularities of the emissions sources" in the state. *Id.* at 421. Likewise, "[state implementation plan] approvals or disapprovals are highly fact-dependent actions." *Id.* at 423. EPA is *statutorily mandated* to analyze "the facts and circumstances of each particular state's submission."   88 Fed. Reg. at 9,354; 42 U.S.C. § 7410(a)(3)(B). EPA admits that "states may be able to establish alternative approaches to addressing their interstate transport obligations … that vary from a nationally uniform framework." *Id.* at 9,340. So unlike nonattainment designations and SIP Calls, there is a "presumption that review of implementation plans should take place in regional circuits." *Texas*, 829 F.3d at 423.

Consistent with this presumption, Oklahoma's State Plan was state-specific, taking into account many local and regional considerations. *See supra* 4-5. EPA specifically claimed that "the contents of each individual state's submission were evaluated on their own merits." 88 Fed. Reg. at 9,354; *see also id.* at 9,363 (claiming that "[t]he EPA evaluated each SIP submission on its merits"). EPA's proposed disapproval of Oklahoma's State Plan was regionally limited, addressing state

implementation plans by Arkansas, Louisiana, Oklahoma, and Texas. 87 Fed. Reg. 9,798 (Feb. 22, 2022). The proposed disapproval was signed not by the EPA Administrator, but by EPA's *Regional* Administrator for Region 6. *Id.* at 9,835. It further directed that "all public comments … should be submitted in the *Regional* docket for this action." *Id.* at 9,801 (emphasis added). Tellingly, the Final Rule offered only "a brief, high level overview of the [state implementation plan] submissions and the EPA's evaluation and key bases for disapproval." 88 Fed. Reg. at 9,354. The Final Rule then indicated the "full basis for EPA's disapprovals" was to be found in the *regional* proposed rules. *Id.*

The substance of EPA's analysis focused on local and regional matters as well. Even within its "high level overview," the Final Rule is replete with references to Oklahoma's State Plan that purportedly support EPA's disapproval. *See, e.g.*, 88 Fed. Reg. at 9,359 ("Oklahoma's approach is … not adequately justified."); *id.* ("EPA disagrees with Oklahoma's arguments for application of a higher contribution threshold than 1 percent of the NAAQS at Step 2."); *id.* ("[T]he State included an insufficient evaluation of additional emissions control opportunities to support such a conclusion."); *id.* ("EPA finds legal flaws in Oklahoma's argument related to collective contribution."); *id.* (rejecting Oklahoma's use of a state-developed regional pollution model as "technically flawed"); *id.* at 9,364 ("EPA has evaluated

state [implementation plan] submissions on the merits of what is contained in the submission, not the use of any particular modeling platform.").

Accordingly, the disapproval of Oklahoma's State Plan applies only to the plan submitted *by Oklahoma*, focusing on *Oklahoma*-specific factors and analyses, and relating only to sources of emissions from *Oklahoma*. The text of the statute, longstanding precedent, the nature of Oklahoma's State Plan, and the face of EPA's final action disapproving that plan all confirm that EPA's disapproval is "purely" and "undisputedly" a local or regional action. *ATK*, 651 F.3d at 1199.

## II.    EPA's disapproval of other state implementation plans in a single notice, applying the same standard, does not transform EPA's disapproval of Oklahoma's plan into an action of nationwide applicability.

In its Motion, EPA does not engage with the statutory text of § 7607(b)(1) relating specifically to implementation plans, much less any of the precedent related to state plan approvals and disapprovals. Instead, EPA argues that petitioners are challenging a nationally applicable action because the disapproval of Oklahoma's plan is part of EPA's "uniform and nationally consistent approach to plans submitted by states across the country." Mot. 10. That argument fails.

EPA contends this petition for review must be heard in the D.C. Circuit because the Final Rule disapproves state plans from twenty-one different states, and so it must be nationally applicable. *See* Mot. 10. But, as noted above, Section 7607(b) "categorizes petitions for review according to the nature of the action that the petition

14

challenges." *Texas*, 829 F.3d at 419. The "action" that petitioners are challenging is EPA's disapproval of Oklahoma's State Plan, which § 7607(b) specifically categorizes as a local/regional action. *See* OG&E's Petition for Review at 2 ("OG&E is petitioning for review of only the portion of the final rule disapproving Oklahoma's State Implementation Plan"); Oklahoma's Petition for Review at 2 (same). EPA might have published several distinct, inherently local actions in a combined *Federal Register* notice, but that does not change the "nature of the regulation" being challenged by petitioners. *ATK*, 651 F.3d at 1199.

EPA's contention that it applied similar standards in reviewing *other* locally or regionally applicable actions cannot make its rejection of Oklahoma's State Plan national either. *See* Mot 12. EPA *must* apply a consistent statutory standard when performing its ministerial duty to evaluate each state implementation plan—or, for that matter, when it takes any other kind of action. If EPA applied different standards, that "[u]nexplained inconsistency'" would be "arbitrary and capricious." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (citation omitted). Complying with that basic requirement of administrative law cannot be sufficient to confer "nationally applicable" status to an EPA action. Rather, while "many locally or regionally applicable actions may require interpretation of the Clean Air Act's statutory terms, … that kind of interpretive exercise alone does not transform a locally applicable action into a nationally applicable one." *Chevron*, 45 F.4th at 387;

*see also Texas*, 829 F.3d at 423 ("It would reverse § 7607(b)(1)'s presumption that review of implementation plans should take place in regional circuits if the guidance one SIP approval provides another state necessarily gave nationwide scope or effect to EPA's determinations."); *Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456 (rejecting argument that state implementation plan approval was national just because it "applies a broad regulation to a specific context and that it may set a precedent for future SIP proceedings").

EPA's argument thus proves too much. If EPA's decision to apply consistent rather than random standards were sufficient to confer "nationally applicable" status to an EPA action, then virtually every valid EPA action under the Act would be "nationally applicable." That cannot be right.

Nor would EPA's argument about a nationwide approach, even if correct, be sufficient to deprive this Court of venue as applied to the action challenged in this case. While EPA touts its "4-step framework," Mot. 10-11, that framework is a convenience rather than a requirement. *See supra* 6-7; Mot. 5-6. And EPA overstates how "uniform" and "nationally consistent" its approach was. As detailed above, EPA claimed it was engaging in an inherently local, state implementation plan-specific analysis, as the Act requires. *See supra* 12-14.

The fact that EPA packaged together the disapprovals of 21 state plans in a single document is not dispositive of—or even relevant to—the venue analysis. This

is not a case where a challenger has attempted to carve-off a local portion of an otherwise national action like the national nonattainment designations list or national SIP Calls. *See ATK*, 651 F.3d at 1200 (differentiating regional application of a national rule, such as attainment designations, from "mere amalgamation of numerous local actions into a single rule"). Rather, it is EPA that is seeking to transform presumptively local actions (state plan approval decisions) into national actions by bundling them with other geographically distant actions in a single rule. EPA cannot so easily evade the venue requirements of § 7607(b)(1).

Even viewing EPA's actions on individual state plans together, the Final Rule dealt with only a minority of state plans for the 2015 ozone NAAQS. EPA promulgated its actions on the state plans of 24 other states separately. 88 Fed. Reg. at 9,362. And it is "deferring action" on the state plans of two additional states. *Id.* at 9,337. If EPA's argument is accepted, it would mean challenges related to the remaining 26 states would be appropriately brought in regional circuits, while challenges related to the 21 states included in the Final Rule would be required to be litigated together in the D.C. Circuit—all by mere happenstance of when and how the EPA decided to publish its approval decision. This Court should not accept EPA's invitation to elevate form over substance.

For the same reason, EPA's concerns about potentially inconsistent results are overblown. Mot. 13. These petitions are the only ones challenging EPA's denial of

Oklahoma's State Plan, meaning that there is no possibility of one court upholding EPA's disapproval of Oklahoma's plan and another vacating that disapproval. The venue determination "should depend on the location of the persons or enterprises that the action regulates rather than on where the effects of the action are felt." *State of New York v. EPA*, 133 F.3d 987, 990 (7th Cir. 1998). So while "the effects" of any given EPA action "may be felt in other regions, that would be true of any major action by the EPA under the Clean Air Act, since air currents do not respect state boundaries." *Id.*

Thus, this Court and others have emphasized that a rule's "practical effects" are not the focus of a court's applicability analysis under § 7607(b)(1). *See ATK*, 651 F.3d at 1197; *see also Natural Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1249 (D.C. Cir. 1988); *Texas*, 2011 WL 710598, at *3. However, to the extent that this Court has concerns because EPA's denial of Oklahoma's State Plan has implications that cross state borders, the cross-state effects are limited to one state— EPA alleges Oklahoma facilities are significantly contributing to ozone NAAQS attainment issues in Texas alone. 87 Fed. Reg. at 9,820. But that at most makes the disapproval of Oklahoma's State Plan "regionally applicable." *See Texas*, 829 F.3d at 421-23 (challenge to Texas and Oklahoma regional haze rulemakings appropriate in Fifth Circuit even though those states fall into two different circuits); *see also State of New York*, 133 F.3d at 990 (emissions exemption for a "cluster of

[Midwestern] states" in separate circuits was regionally applicable even though "the effects of the exemption" were felt in Northeastern states). Congress did not make venue dependent on whether an action was "intrastate" or "interstate" in nature; rather, it funneled only those actions that were truly "nationally applicable" to the D.C. Circuit, leaving regional issues to the regional circuits.[2] 42 U.S.C. § 7607(b)(1). Review is thus appropriate in this Court.[3]

## III.   EPA cannot make its disapproval of Oklahoma's State Plan "national" through its incorrect "determination" of national scope.

Perhaps in recognition that a rule rejecting a state plan prepared by Oklahoma that operates only in Oklahoma is facially "local" or at most "regional," EPA alternatively argues that the Court should transfer these petitions to the D.C. Circuit because EPA "made and published an unambiguous finding that the Final Rule is based on a determination of 'nationwide scope or effect.'" Mot. 13-14. EPA wrongly

---

[2] At most, the regional nature of ozone pollution would mean that challenges to the disapproval of Oklahoma's State Plan could have been brought either in this Court or, if the challenge was brought together with other relevant states, the Fifth Circuit as an "appropriate circuit." 42 U.S.C. § 7607(b)(1). But in no event is transfer to the D.C. Circuit consistent with § 7607(b)(1).

[3] EPA intimates, but stops short of arguing, that the dispute over which court this case belongs in is a jurisdictional one. *See* Mot. 9 n.6. But the law is clear that the circuit-selection provisions of § 7607(b)(1) pertain to venue, not jurisdiction. *Texas*, 829 F.3d at 418; *S. Ill.*, 863 F.3d at 669 n.2; *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 879 (D.C. Cir. 2015); *Texas Mun. Power Agency v. EPA*, 89 F.3d 858, 867 (D.C. Cir. 1996).

insists this Court must give "significant deference" to that determination. *Id.* at 14. But this Court does not defer to EPA on its choice of venue.

Section 7607(b)(1) does provide that even for "locally or regionally applicable" actions, venue can lie in the D.C. Circuit when (1) "such action is based on a determination of nationwide scope or effect" *and* (2) "in taking such action the Administrator finds and publishes that such action is based on such a determination." These two elements are distinct. The "determinations" under the first prong "are the justifications the agency gives for the action and they can be found in the agency's explanation of its action." *Texas*, 829 F.3d at 419. The "finding" at the second step "is an independent, *post hoc*, conclusion by the agency about the nature of the determinations; the finding is not, itself, the determination." *Id.*; *see also Texas Mun. Power Agency*, 89 F.3d at 866 n.6 ("[T]he proviso [in section 7607(b)(1)] … seems to require both a *court determination* of scope and effect, *and* a similar published determination by the [EPA] Administrator[.]" (first emphasis added)).

"[B]oth criteria must be satisfied to transfer venue from the appropriate regional circuit to the D.C. Circuit." *Texas*, 829 F.3d at 420. EPA's argument that this Court must defer to its determinations confuses the two statutory elements. Mot. 14. "The court—not EPA—determines both the scope of an action's applicability and whether it was based on a determination of nationwide scope or effect." *Texas v. EPA*, 983 F.3d 826, 833 (5th Cir. 2020). If courts deferred to EPA on both points,

the first statutory requirement would be wholly superfluous, for the Court would only review EPA's finding without assessing the nature of the substantive determination itself. Thus, rather than defer to EPA's assessment of nationwide scope or effect, courts "must make an independent assessment of the scope of the determinations just as [courts] make an independent assessment of the applicability of the action." *Texas*, 829 F.3d at 421-22 (citing, *inter alia*, *ATK*, 651 F.3d at 1196-97).

With EPA's misplaced claim to deference out of the way, EPA's alternative argument for transfer withers. This Court must determine whether "the scope or effect" of the "relevant determinations" EPA made in disapproving Oklahoma's State Plan are "nationwide." *Id.* at 420. And, for the reasons already given, they plainly are not. EPA based its disapproval on its inherently local, Oklahoma-specific assessment of Oklahoma's State Plan. *See supra* at 12-14. Likewise, EPA's insistence that its disapproval of Oklahoma's State Plan is national because EPA applied a "nationally consistent 4-step interstate transport framework" fares no better. Mot. 14; *See supra at* 15-16 (explaining why EPA always must apply a consistent framework to evaluate state implementation plans); *see also Am. Rd. & Transp. Builders Ass'n*, 705 F.3d at 456 (EPA's approval of a state implementation plan is not national just because it "applies a broad regulation to a specific context and that it may set a precedent for future SIP proceedings"). More importantly, those

21

generally applicable legal principles are not "the relevant determinations … that lie at the core of the agency action." *Texas*, 829 F.3d at 419. Here—like in every other state implementation plan approval or disapproval to date—the determinations undergirding EPA's disapproval were tightly focused on the specific elements of *Oklahoma's* State Plan.

Finally, EPA's suggestion that the arguments Petitioners may lodge on the merits are relevant to the "nationwide scope or effect" inquiry is flatly wrong. *See* Mot. 16-17. This Court confronted and rejected that same argument in *ATK*, disagreeing with contentions that "the manner in which a petitioner frames his challenge to a regulation may alter the court in which the suit belongs." 651 F.3d at 1199.

**PRAYER**

Petitioners ask that the Court deny EPA's Motion.

DATED: April 6, 2023

Respectfully submitted,

/s/ *Megan Berge*
Megan H. Berge
Sarah Douglas
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001
(415) 291-6233
(202) 639-7733

/s/ *Michael B. Schon*
Michael B. Schon
LEHOTSKY KELLER LLP
200 Massachusetts Ave NW
Washington, DC 20001
(202) 436-4811
(512) 693-8350
mike@lehotskykeller.com

J. Mark Little                          /s/ *Garry M. Gaskins, II*

BAKER BOTTS L.L.P.                      Gentner F. Drummond

910 Louisiana Street                    *Attorney General*

Houston, TX 77002                       Garry M. Gaskins, II

(713) 229-1489                          *Solicitor General*

                                        Zach West

*Counsel for Oklahoma Gas and*          *Director of Special Litigation*

*Electric Company*                      Jennifer L. Lewis

                                        *Assistant Attorney General*

                                        OFFICE OF ATTORNEY GENERAL

                                        STATE OF OKLAHOMA

                                        313 N.E. 21st Street

                                        Oklahoma City, OK 73105

                                        Main: (405) 521-3921

                                        garry.gaskins@oag.ok.gov

                                        *Counsel for State of Oklahoma, by and*
                                        *through its Attorney General, Gentner F.*
                                        *Drummond, and Oklahoma Department of*
                                        *Environmental Quality*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This response complies with the word limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,161 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word 2019 in Times New Roman 14-point font.

DATED: April 6, 2023.

/s/ Michael B. Schon
Michael B. Schon
LEHOTSKY KELLER LLP
200 Massachusetts Ave NW
Washington, DC 20001
(202) 436-4811
(512) 693-8350
mike@lehotskykeller.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, I electronically filed the foregoing using

the Court's CM/ECF system which will send notification of such filing to the parties.

/s/ Michael B. Schon
Michael B. Schon
LEHOTSKY KELLER LLP
200 Massachusetts Ave NW
Washington, DC 20001
(202) 436-4811
(512) 693-8350
mike@lehotskykeller.com